**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANNON STANDRIDGE, et al.,<br>Plaintiffs,<br>v.<br>ISLAND HOSPITALITY MANAGEMENT, LLC, et al.,<br>Defendants.<br><br>AND RELATED THIRD-PARTY ACTION. | Case No.: 3:25-CV-02285-W-AHG<br><br>**ORDER GRANTING BETA BIONICS, INC.'S MOTION TO DISMISS [DOC. 27] FIRST AMENDED THIRD-PARTY COMPLAINT** |

Pending before the Court is Third-Party Defendant Beta Bionics, Inc.'s ("Beta Bionics") motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Amended Third-Party Complaint filed by Defendants and Third-Party Plaintiffs Island Hospitality Management, LLC ("Island Hospitality") and WS 831 Sixth Owner LLC ("WS 831") (collectively, "Third-Party Plaintiffs"). Third-Party Plaintiffs oppose and request leave to amend to add a claim for strict products liability.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the motion [Doc. 27] **WITH LEAVE TO AMEND**.

## I. BACKGROUND

Plaintiff Shannon Standridge, a pediatric neurologist who lives in Cincinnati, Ohio, was a guest at the Moxy Hotel San Diego in November 2024 while attending a medical conference. (*Compl.* [Doc. 1] ¶¶ 1, 3, 15–16.) Standridge has diabetes, a condition that "can result in life-threatening hypoglycemic events if blood sugar levels drop too low." (*Id.* ¶ 17.) Island Hospitality operates the Moxy Hotel, and WS 831 owns it. (*Id.* ¶¶ 4, 8.)[1]

On November 13, 2024, Standridge did not check in for her flight home at the expected time. (*Compl.* ¶¶ 16, 18.) At about 3:18 p.m., her husband, Plaintiff Shawn Standridge, called the hotel, explained that she was not responding to his messages, and asked staff to check on her. (*Id.* ¶¶ 18–20.) In a second call three minutes later, he told staff that she was diabetic, that her blood sugar was likely low, and that she might need sugar right away. (*Id.* ¶¶ 22–23.) Staff told him that someone had already checked on her and found her sleeping, and promised to check on her again. (*Id.* ¶¶ 21, 24–26.) Plaintiffs allege that staff never did so. (*Id.* ¶¶ 29, 40.) Hotel security entered the room only after a bystander heard "strange sounds," and they found Standridge unresponsive. (*Id.* ¶¶ 40–41.) Paramedics were called at 5:03 p.m. and found her in circulatory shock and acute hypoxic respiratory failure. (*Id.* ¶¶ 42–43.) Plaintiffs allege that by the time she received treatment, Standridge had suffered a severe hypoxic brain injury that has left her with permanent cognitive deficits. (*Id.* ¶¶ 44–46.)

---

[1] WS 831 was sued as Wheelock Street Investment Management, LLC. (*FATPC* [Doc. 26] at 1.) Defendant Marriott International, Inc., which Plaintiffs allege is the hotel's parent company (*Compl.* ¶ 6), is not a party to the third-party complaint.

On September 3, 2025, Plaintiffs filed this diversity action against Island Hospitality, WS 831, and Marriott International, Inc., asserting a single cause of action for negligence. (*Compl.* ¶¶ 12, 48–72.) They allege that Defendants failed to perform the wellness check they promised, and that the resulting delay was a substantial factor in causing Standridge's injuries because "[t]ime was of the essence for Shannon while she was experiencing a hypoglycemic event." (*Id.* ¶¶ 57, 66–67.) The Complaint does not mention Beta Bionics or any medical device. (*See id.*)

On March 10, 2026, the Court granted Defendants' joint motion for leave to file a third-party complaint ("TPC"). (*See* Docs. 18, 19.) On March 17, 2026, Island Hospitality and WS 831 filed a Third-Party Complaint against Beta Bionics for equitable indemnity and contribution. (*TPC* [Doc. 20].) It alleged that Beta Bionics manufactures and sells the iLet Bionic Pancreas, an automated insulin delivery system, that Standridge was using one on the day of the incident, and, on information and belief, that the device "caused or contributed to" her injuries. (*Id.* ¶¶ 10–13.) On April 14, 2026, Beta Bionics moved to dismiss [Doc. 25], and on May 5, 2026, Third-Party Plaintiffs responded by filing the First Amended Third-Party Complaint ("FATPC" [Doc. 26]). *See* Fed. R. Civ. P. 15(a)(1)(B).

The FATPC adds several allegations. It alleges that the iLet Bionic Pancreas is "a closed-loop system that delivers insulin based on input from an integrated continuous glucose monitor," and that it is advertised as able "to automatically adjust the wearer's insulin needs." (*FATPC* ¶¶ 9–10.) It alleges, on information and belief, that paramedics who responded to the hotel learned that Standridge had a history of type 1 diabetes and tested her blood glucose, and that "the paramedics using their own equipment obtained a glucometer reading of 'low;' however, Plaintiff Shannon Standridge's iLet Bionic Pancreas had a glucometer reading of 'hi.'" (*Id.* ¶¶ 12–13.) It further alleges, on information and belief, that "Plaintiffs allege" the incident "was caused by a malfunctioning of her iLet Bionic Pancreas machinery." (*Id.* ¶ 14.) And it now alleges that Beta Bionics is a "joint tortfeasor" with Third-Party Plaintiffs because it "designed,

manufactured, and sold the iLet Bionic Pancreas that caused or contributed to" Standridge's injuries. (*Id.* ¶ 17; *see id.* ¶ 23.) The FATPC asserts two claims: equitable indemnity (*id.* ¶¶ 16–21) and equitable contribution (*id.* ¶¶ 22–25).

Beta Bionics now moves to dismiss the FATPC. (*P&A* [Doc. 27-1].) Third-Party Plaintiffs oppose and request leave to file a second amended third-party complaint "to raise an explicit claim of strict products liability." (*Opp'n* [Doc. 29] 7.) Beta Bionics has replied. (*Reply* [Doc. 31].)

## II. Legal Standards

### A. Rule 12(b)(6)

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 570). A court should grant leave to amend unless the plaintiff could not possibly cure defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

### B. Equitable Indemnity and Contribution Under California Law

The parties agree that California law governs Third-Party Plaintiffs' claims. (*See P&A* 6; *Opp'n* 3.) Under California's doctrine of comparative equitable indemnity, "a concurrent tortfeasor "may obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis" and a defendant may pursue that claim against a tortfeasor the plaintiff did not sue. *Am. Motorcycle Ass'n v. Superior Ct.*, 20 Cal. 3d 578, 608 (1978). The comparative equitable indemnity doctrine "applies only among defendants who are jointly and severally liable to the plaintiff." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004). But "joint and several liability in the context of equitable indemnity is fairly expansive." *Id.* It is not confined to joint tortfeasors in the traditional sense, and "can apply to acts that are concurrent or successive, joint or several, as long as they create a detriment caused by several actors." *Id.* (citing *Yamaha Motor Corp. v. Paseman*, 219 Cal. App. 3d 958, 964 (1990)). The one necessary factor is "some basis for tort liability against the proposed indemnitor." *Id.* That basis is generally "a duty owed to the underlying plaintiff," but "vicarious liability . . . and *strict liability* . . . also may sustain application of equitable indemnity." *Id.* (citations omitted) (emphasis added).

Contribution likewise depends on joint liability, as Third-Party Plaintiffs acknowledge. (*Opp'n* 3.) California's contribution statute provides that "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them," which "may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof." Cal. Civ. Proc. Code § 875(a), (c).

### C. Third-Party Practice Under Rule 14

A defending party "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Thus, "a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Id.* at 200 (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (1971 ed.)).

## III. DISCUSSION

Beta Bionics argues that the FATPC should be dismissed because Third-Party Plaintiffs (1) fail to adequately allege that Beta Bionics is a joint tortfeasor, (2) fail to allege a plausible basis for Beta Bionics' liability, and (3) lack standing to seek contribution before judgment. (*P&A* 6–10.) The first two arguments both turn on whether the FATPC plausibly alleges a basis for Beta Bionics' tort liability to Plaintiffs, so the Court addresses them together. Because Third-Party Plaintiffs will be given leave to amend, the Court also addresses the contribution argument, and then turns to the scope of leave.

### A. The FATPC Does Not Plausibly Allege a Basis for Beta Bionics' Liability to Plaintiffs

Both of Third-Party Plaintiffs' claims depend on joint liability, as they concede. (*Opp'n* 3.) Therefore, to be a legally sufficient complaint, the FATPC must allege facts plausibly showing "some basis for tort liability" against Beta Bionics. *BFGC*, 119 Cal. App. 4th at 852.

Much of the FATPC consists of labels. Its description of Beta Bionics as a "joint tortfeasor" (*FATPC* ¶¶ 17, 23), its assertion that the device "caused or contributed to" Standridge's injuries (*id.* ¶ 17), and its references to Beta Bionics' "negligence, carelessness, intentional misconduct or other wrongful conduct" (*id.* ¶¶ 17, 23–24) are legal conclusions that the Court need not accept as true. *See Iqbal*, 556 U.S. at 678; *Sprewell*, 266 F.3d at 988. The Court also gives no weight to paragraph 14's allegation that "Plaintiffs allege" the incident was caused by a malfunction of the device. (*FATPC* ¶ 14.) Plaintiffs' Complaint contains no such allegation, and paragraph 14 characterizes another party's position rather than alleging a fact about the device.[2]

Stripped of these conclusions, the FATPC does not say what Beta Bionics did wrong. It alleges no facts about how Beta Bionics designed, manufactured, tested, or labeled the iLet Bionic Pancreas. In their opposition, Third-Party Plaintiffs explain that their theory is strict products liability; Beta Bionics, they contend, is "strictly liable to Plaintiffs based on its failure to provide a defect-free iLet Bionic Pancreas device to Mrs. Standridge." (*Opp'n* 5.) A complaint need not name the legal theory on which it rests. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). But it must allege facts that, if true, would satisfy that theory's elements. *See Iqbal*, 556 U.S. at 678. The Court therefore asks whether the FATPC's factual allegations plausibly show that Beta Bionics would be strictly liable to Plaintiffs for Standridge's injury.

Under California law, a manufacturer is strictly liable in tort "when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62 (1963). A product has a manufacturing defect if it "differs from

---

[2] Third-Party Plaintiffs' opposition states that their understanding of the incident derives from their "initial investigation and conversations with Plaintiffs' counsel." (*Opp'n* 2.) The Court does not consider facts asserted only in an opposition brief. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

the manufacturer's intended result or from other ostensibly identical units of the same product line," and a design defect if, among other things, it "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429–30 (1978). Either way, the pleading must allege both a defect and that the defect caused the injury. To plead a manufacturing defect, a plaintiff "must identify/explain how the [product] either deviated from [the manufacturer's] intended result/design or how the [product] deviated from other seemingly identical [product] models." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010); *accord Reynolds v. EzriCare LLC*, 700 F. Supp. 3d 830, 842–43 (N.D. Cal. 2023). And the facts alleged must allow the Court to "plausibly follow the causal chain" from the product to the injury. *Quinn v. Proctor & Gamble Co.*, No. 24-CV-856 JLS (SBC), 2026 WL 26081, at *7 (S.D. Cal. Jan. 5, 2026).

Here, the FATPC does not meet that standard. Its factual allegations about the device come down to the following. Standridge was using the iLet Bionic Pancreas, a closed-loop system that "delivers insulin based on input from an integrated continuous glucose monitor" (*FATPC* ¶¶ 9, 11), and when paramedics arrived, their glucometer read "low" while her device read "hi" (*id.* ¶¶ 12–13). As Beta Bionics observes, the inference those facts directly support is that two glucose readings differed. (*Reply* 4.) To get from a naked discrepancy in readings to a theory of strict liability, the Court would have to infer, without any supporting allegation, (1) that the device's reading rather than the paramedics' was the inaccurate one, (2) that the device was misreading Standridge's glucose during the hours that mattered, rather than only when the paramedics arrived, (3) that in addition to displaying "hi", the device acted on a faulty "hi" reading by delivering insulin to Standridge (4) that the insulin it delivered caused or deepened a hypoglycemic event, and (5) that the malfunction reflected a defect in the device rather than something about how it was worn, calibrated, or used. The FATPC alleges none of these things. Beta Bionics correctly notes the FATPC does not allege what the malfunction was or how it caused Standridge's injury. (*Id.* at 3.)

The FATPC does not even commit to which way Standridge's blood sugar went. It says only that Plaintiff "alleges that she experienced either a severe hyperglycemic or hypoglycemic event." (*FATPC* ¶ 8.)[3] Whether a "hi" reading was a malfunction at all, and whether it could have harmed her, depends on the answer. And a pleading that does not say whether, when, or how the device delivered insulin cannot plausibly allege that the device caused her injury. Each link in the chain Third-Party Plaintiffs propose may be possible. But where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court is not required to supply "unwarranted deductions of fact" or "unreasonable inferences" to close the gap, *Sprewell*, 266 F.3d at 988, and attributing Standridge's injury to a product defect on these allegations would require it to do exactly that.

The cases in which courts have sustained strict liability claims at the pleading stage illustrate what is missing. In *Reynolds*, the plaintiffs alleged that Mr. Reynolds developed an infection from a rare bacterial strain after using the defendant's eye drops dozens of times, that the CDC had linked an outbreak of that bacterium to the product, and that the FDA had advised consumers to stop using it. 700 F. Supp. 3d at 837–38. Because the complaint alleged that the product itself caused the infection, the court could infer that the product deviated from its intended result, and it did not require the plaintiffs to plead "what part of the manufacturing process caused the defect." *Id.* at 843. Similarly, in *Quinn*, the court could "plausibly follow the causal chain" because the plaintiff alleged testing and a recall showing that the products she used contained benzene, and years of use preceding her diagnosis. 2026 WL 26081, at *7. The FATPC offers nothing

---

[3] Plaintiffs' Complaint describes the event as hypoglycemic (*Compl.* ¶¶ 17, 23, 67), and the Court may consider the Complaint, which is part of the record in this action and which the FATPC incorporates by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). But the FATPC incorporates the Complaint expressly "not for the purpose of admitting any of [its] allegations" (*FATPC* ¶ 18), and its own allegations do not adopt Plaintiffs' account.

comparable. It does not allege that the device did anything to Standridge—only that, at some point, it displayed a reading different from the paramedics' meter.

To be clear, Third-Party Plaintiffs need not explain the inner workings of the device or identify the precise flaw that caused it to misread. *See Reynolds*, 700 F. Supp. 3d at 842. Nor must they prove their theory now. But they must allege facts, rather than a chain of unstated inferences, showing that the device malfunctioned and that the malfunction contributed to Standridge's injury. They may plead those facts on information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). As pleaded, the FATPC does not identify the factual information on which its beliefs rest.

Because the FATPC does not plausibly allege a basis for Beta Bionics' tort liability to Plaintiffs, it does not plausibly allege that Beta Bionics is jointly liable with Third-Party Plaintiffs, and both claims fail. *See BFGC*, 119 Cal. App. 4th at 852. The motion is granted on this ground.[4]

### B. Third-Party Plaintiffs May Seek Contribution Before Judgment

Beta Bionics next argues that Third-Party Plaintiffs lack standing to seek contribution because no judgment has been entered. (*P&A* 10.) Because the issue will recur if Third-Party Plaintiffs amend, the Court addresses it now. Beta Bionics' argument

---

[4] Because the FATPC fails for this reason, the Court does not reach Beta Bionics' arguments that the FATPC undermines its joint-tortfeasor allegation by alleging that Beta Bionics alone caused Standridge's injury, and that it relies on facts absent from Plaintiffs' Complaint. (*P&A* 7–8.) Should Third-Party Plaintiffs amend, the Court notes that a party may plead in the alternative, Fed. R. Civ. P. 8(d)(2)–(3), and that a third-party complaint need not mirror the original complaint so long as the third-party defendant's liability is derivative of the main claim, *see Stewart*, 845 F.2d at 199–200.

concerns ripeness rather than standing and does not provide an independent basis for dismissal.

Beta Bionics is correct that under California law, the statutory right of contribution "comes into existence only after the issuance of a judgment declaring more than one defendant jointly liable to the plaintiff." *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1138 (N.D. Cal. 2010) (citing *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal. App. 4th 1372, 1378 (1992)); *see* Cal. Civ. Proc. Code § 875(a), (c). But whether a claim has accrued under state law does not determine whether it may be asserted in federal court through impleader. Rule 14(a)(1) permits a defendant to bring in a nonparty who "is or *may be* liable to it" (emphasis added), and so "permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate—i.e., has not yet accrued under the governing substantive law—so long as the third-party defendant may become liable for all or part of the plaintiff's judgment." *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994); *see Peyton v. Wyndham Hotels & Resorts, LLC*, No. 5:24-cv-01575-SVW-RAO, 2024 WL 5375878, at *4 (C.D. Cal. Dec. 19, 2024) (finding hotel operator's third-party claims against seller of lounge chair involved in guest's injury ripe, though contingent on the outcome of the guest's claims); *Kormylo v. Forever Resorts, LLC*, No. 13-CV-511 JM (WVG), 2015 WL 106379, at *5 (S.D. Cal. Jan. 6, 2015) (holding indemnity claims brought under Rule 14(a) were ripe "although they have not yet accrued under California law"); 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1451 (3d ed. Apr. 2026 update). *Sullins*, on which Beta Bionics relies, arose on summary judgment in a direct action and did not involve a third-party claim under Rule 14. *See* 729 F. Supp. 2d at 1130–31, 1138.

Beta Bionics repeats the point in reply but does not develop it, instead conceding that Rule 14(a) "creates a procedural exception allowing impleader claims in certain limited situations" before returning to its joint-tortfeasor argument. (*Reply* 2.) The Court therefore declines to dismiss the contribution claim on this ground.

**C. Leave to Amend**

Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Knappenberger*, 566 F.3d at 942. Although the FATPC is Third-Party Plaintiffs' second pleading, this is the first time the Court has ruled on the sufficiency of their claims, and the deficiencies identified above are factual ones that additional allegations may cure. Third-Party Plaintiffs represent that they can "more fully allege" the elements of a strict products liability theory. (*Opp'n* 6.) Leave to amend is therefore granted.

However, Third-Party Plaintiffs' request also appears aimed at a second purpose. They ask for leave to add a new, direct claim for their own damages, including "injury to [their] property caused by having to enter [Standridge's] room by force, as well as the costs and burden associated with this litigation." (*Id.* at 7.) Unlike indemnity and contribution, that kind of claim would not seek "to transfer to the third-party defendant the liability asserted against [Third-Party Plaintiffs] by the original plaintiff" and would instead be a direct cause of action. *Stewart*, 845 F.2d at 200 (quoting 6 Wright & Miller § 1446). Whether such a claim may be joined with Third-Party Plaintiffs' existing claims, *see* Fed. R. Civ. P. 18(a), whether such a claim is in harmony with a strict liability theory of recovery, or whether the claim is cognizable, are all questions the parties have not briefed. Beta Bionics' reply asserts that Third-Party Plaintiffs lack standing to bring such a claim but does not develop the point. (*Reply* 2.)

In this regard, Third-Party Plaintiffs did not follow the procedure for adding a new claim. A motion to amend a pleading must be accompanied by the proposed amended pleading and a version showing how it differs from the operative pleading. Civ. L.R. 15.1(b). Without a proposed pleading, neither the Court nor Beta Bionics can evaluate what the new claim would allege. The leave granted in this Order is therefore limited to curing the deficiencies identified above. The request to add a direct claim for Third-Party Plaintiffs' own damages is denied without prejudice to a separate properly noticed motion under FRCP Rule 15(a)(2) and Civil Local Rule 15.1(b).

## IV. Conclusion & Order

For the foregoing reasons, the Court **GRANTS** Beta Bionics' motion to dismiss [Doc. 27] and **DISMISSES** the First Amended Third-Party Complaint **WITH LEAVE TO AMEND**. Third-Party Plaintiffs' request for leave to add a direct claim for their own damages is **DENIED WITHOUT PREJUDICE** to a properly noticed motion under FRCP Rule 15(a)(2) and Civil Local Rule 15.1(b). Any second amended third-party complaint must be filed within 21 days of the date this Order is filed, must be accompanied by a version showing how it differs from the First Amended Third-Party Complaint, *see* Civ. L.R. 15.1(c), and may not add new claims or parties without leave of Court.

**IT IS SO ORDERED.**

Dated: November 18, 2026

Hon. Thomas J. Whelan
United States District Judge